# Elmore *v.* Fitzpatrick.

### *Statutory Action of Detinue for Horse.*

1. *Declarations explanatory of possession.*—The declarations of a person who has possession of a horse, as to the terms of the contract under which he obtained the possession, to the effect that the title was to remain in his vendor until the purchase-money was paid, are competent evidence against one claiming under him by subsequent contract, but not as against one claiming by paramount title.

2. *Offspring of animals held under bailment, or executory contract of purchase.*— A colt, foaled while its dam is held under a bailment, or executory contract of purchase, by the terms of which the title is to remain in the bailor or vendor until the agreed price is paid, is also subject to the terms of such contract.

APPEAL from the Circuit Court of Elmore.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Benjamin Fitzpatrick, against Betsy Elmore, to recover a horse, together with damages for its detention; and was commenced on the 12th June, 1876. The record does not show what pleas were filed; but there was a trial by jury, and a verdict and judgment for the plaintiff. On the trial, as appears from the bill of exceptions, the evidence for the plaintiff showed, that the late Governor Fitzpatrick, who was the father of the plaintiff, owned the mare which was the dam of the horse in controversy, and on the 1st October, 1869, agreed to sell her to Dennis Elmore, who was the husband of the defendant, at the price of one hundred dollars; that the mare was delivered to said Dennis under this contract, and he executed his note to said Fitzpatrick for the price, payable one day after date, but the title was to remain in Fitzpatrick until the note was paid; that the mare continued in the possession of said Dennis until his death, which occurred some time in June, 1872; that the colt was foaled in May, 1872, a few weeks before the death of Dennis, and was raised by the defendant; that Governor Fitzpatrick died in November, 1869, and Mrs. A. R. Fitzpatrick and E. J. Fitzpatrick qualified as executor and

[Elmore v. Fitzpatrick.]

executrix of his last will and testament; that in March, 1872, the note for the price of the mare being still unpaid, Mrs. Fitzpatrick sent an agent to demand the mare from said Dennis, who was then living on land rented from Thomas Williams; that Dennis declared he wished to keep her, and, at his request, said Williams thereupon wrote a note to Mrs. Fitzpatrick, in these words: "Dennis Elmore has a horse that he yet owes you for. If you will let him keep the animal, I will see that you get one hundred dollars next fall for it." Mrs. Fitzpatrick "consented to the arrangement, and permitted the mare to remain in the possession of Dennis; and said Williams was never notified more about the note or mare, until some time in the early part of 1876, when he was called on by said E. J. Fitzpatrick, one of the executors, for the payment of the one hundred dollars." On the final settlement of Governor Fitzpatrick's estate, the note of Dennis Elmore became part of the assets of Mrs. Fitzpatrick's estate, she having died in August, 1872, making the plaintiff in this suit her general residuary legatee; and on the 2d May, 1876, after the final settlement of the estate, E. J. Fitzpatrick being also her executor, he transferred said note to the plaintiff, by a written assignment stating the facts.

The plaintiff introduced one Henry Long as a witness, who testified that, on or about the 1st October, 1869, he met Dennis Elmore riding the mare away from Governor Fitzpatrick's plantation, and asked him what he was doing with her, and that Dennis replied: "I have bought her from Governor Fitzpatrick, and have agreed to pay him one hundred dollars for her; but the title is not to be in me, until the mare is paid for." The defendant objected to the admission of these declarations, it being shown that she was not present when they were made; but the court overruled her objection, and admitted them; to which the defendant reserved an exception. "It was proved, also, on the part of the plaintiff, that said Dennis Elmore, on the day before his death, directed that the mare should be delivered up to Mrs. Fitzpatrick; and the testimony tended to show that, on the same day, the defendant promised said Thomas Williams that the mare should be delivered up if Dennis died." The value of the horse, and the defendant's possession at the commencement of the suit, were also proved.

"The foregoing was all the testimony introduced by the plaintiff. On the part of the defendant, there was testimony tending to show, that Governor Fitzpatrick had given and delivered the mare to her, she being an old family servant; that the mare was at the time lame and diseased, and worth but little, if anything; that she had possession of said mare

(26)

[Elmore v. Fitzpatrick.]

from the fall of 1869, and always claimed her as her own property, and that she also claimed the colt as her property; that the mare died, about two years since, in her possession, and that the horse sued for had been in her possession since it was foaled, up to the present time. This was the whole of the testimony introduced on the part of the defendant."

"The defendant asked the court, in writing, to charge the jury as follows: 1. That if the jury believe all the evidence introduced by the plaintiff, he cannot recover in this suit. 2. That if the jury believe all the testimony introduced by the plaintiff, he has no such title as will authorize him to recover in this suit." The court refused these charges, and the defendant excepted to their refusal; and she now assigns as error the refusal of these charges, and the admission of the evidence to which an exception was reserved.

WATTS & SON, for appellant.

E. J. FITZPATRICK, contra.

MANNING, J.—According to the evidence for plaintiff below, appellee in this court, defendant below, Betsy Elmore, had no other right to the horse in controversy, than that the animal was in the possession of her husband, Dennis Elmore, at the time of his death, and remained in hers; and she had no title to the horse higher than she could have derived from Dennis. Upon this state of the evidence, it was not error in the court to permit the declarations of Dennis, while he was in possession, of the terms on which he received the mare, the dam of the horse sued for, from the late Governor Fitzpatrick, to go as evidence to the jury. The acknowledgments of Dennis, that the mare was to remain the property of Governor Fitzpatrick, till she was paid for, and he was to hold her as such, were, in that aspect of the case, admissible. When, afterwards, defendant introduced evidence tending to show title in herself, independent of, and paramount to that of her husband, proper instructions should have been given to the jury, if requested by defendant, in respect to the weight due to the declarations of Dennis, if they believed defendant's title to be paramount to, and independent of his. There was, consequently, no error in admitting the evidence objected to.

2. The evidence adduced by plaintiff conduced strongly to show that the title to the mare was in Governor Fitzpatrick, and was to remain in him as security for the payment of Dennis' note for $100; and as the title to the offspring of the mare follows that of the dam, according to the rule, *partus*

*sequitur ventrem*, the title to her colt, the horse in controversy, was in the same person who had title to the mare; and that title, after the death of Governor Fitzpatrick, was transferred to his son, the plaintiff in the present cause, and the owner and holder of the note of Dennis. It follows, that there was no error in the refusal to give the charges requested by defendant.

Let the judgment be affirmed.

BRICKELL, C. J., not sitting.